JOHN TOMPKINS, SURVIVING PARTNER OF JOHN TOMPKINS AND ADAM MURRAY, TRADING UNDER THE FIRM OF TOMPKINS AND MURRAY, COMPLAINANTS AND APPELLANTS, *v.* LEONARD WHEELER ET AL., DEFENDANTS.

A bill to set aside a deed of assignment, made by an insolvent debtor, for the purpose of securing the payment of his debts to certain enumerated creditors, to the exclusion of the complainant, also a creditor of the assignor, and of others.

A debtor may lawfully apply his property to the payment of the debts of such creditors as he may choose to prefer; and he may elect the time when it is to be done, so as to make it effectual; and such preference must necessarily operate to the prejudice of creditors not provided for, and cannot furnish any evidence of fraudulent intention.

The case of Marbury *v.* Brooks, 7 Wheat. 556, and 11 Wheat. 78, cited.

When a deed of assignment is absolute upon its face, without any condition whatever attached to it, and is for the benefit of the grantees, the presumption of law is that the grantees accepted the deed.

The delivery of a deed of assignment for the benefit of creditors to the clerk, to be recorded, may be considered as a delivery to a stranger for the use of the creditors; there being no condition annexed to the assignment, making it an escrow.

After the assignment, the creditors for whose benefit the same was made, neglected to appoint an agent or trustee to execute it, and the property assigned remained in the hands of the assignor. The property consisted principally of choses in action, which the assignor went on to collect, and divided the proceeds among the creditors; under the assignment. No one of the creditors was dissatisfied; and at any time the creditors could have taken the property out of the hands of the assignor. Held, that, leaving the property in the hands of the assignor under these circumstances, did not affect the assignment; or give a right to a creditor not preferred by it, to set it aside.

APPEAL from the Circuit Court of the United States for the district of Kentucky.

In the Circuit Court of Kentucky a bill was filed, on the equity side of the Court, for the purpose of setting aside a deed of assignment or mortgage made by Leonard Wheeler, for the purpose of securing certain of his creditors, in preference to the complainant, who was also a creditor.

At the November term, 1837, of the Circuit Court, the complainants had obtained certain judgments against the defendant Wheeler; and on the application of the defendant, it was agreed that no executions should be issued upon those judgments until February, 1838. The debt on which the judgments had been

obtained amounted to twelve thousand dollars, which had been purchased by the plaintiffs for one thousand dollars; the defendant having failed in 1814, and this being one of the debts due by him at the time of his failure. He afterwards entered into business in Kentucky, contracted a large amount of debts, and obtained some property.

Five days before the time when the complainant had a right to issue execution on the judgments, Leonard Wheeler executed a general assignment or mortgage of all his property. The assignment provided for the payment, in the first place, of all his debts contracted since his failure, in 1814, giving to them a priority or preference, " as all his means and effects had been accumulated by the credit given to him in Kentucky; the same being divided into two classes." It provided that among his old debts, out of the surplus of his estate, which was expected to remain after the first and second class of preferred debts had been satisfied, that certain debts, due by him in 1814, the judgments in favour of the plaintiffs not being among them, should be paid; and not believing the effects assigned would extend beyond the payment of these debts, no others were designated. The assignment then proceeds to assign and transfer all the property and effects to the creditors of the first and second class, in trust to pay the debts according to the preferences and classification on the same; giving to the said creditors, or a majority of them, power to nominate and appoint an agent, attorney, or trustee, to carry the purposes of the instrument into full effect.

On the 15th of February, 1838, writs of fieri facias were issued on the judgments, which were returned by the marshal "nulla bona."

The appellant filed a bill in the Circuit Court, praying that the deed of assignment executed by Wheeler should be decreed fraudulent and void, as it regards the complainant. The bill also alleged acts done by the defendant Wheeler for the concealment of property, and also the nominal creation or increase of debts which were included in the preferences made by the assignment, and other acts of fraudulent collusion : and also, it alleged that the property assigned had been left in the hands of the assignor, and the creditors had never appointed an agent, or trustee, who had taken charge or direction of the property assigned. In the

opinion of the Court, delivered by Mr. Justice Thompson, other facts are stated, which are taken notice of by the Court.

The Circuit Court made a decree dismissing the bill, and the complainants prosecuted this appeal.

The case was submitted to the Court, on a printed argument, by Mr. Ogden, for the appellant; and by Mr. Crittenden, who presented to the Court the printed argument of Mr. M. C. Johnson, for the appellee.

Mr. D. B. Ogden, for the appellant.

The right and power of a debtor to give a preference to some bonâ fide creditors over others, is not denied. But such preferences are no favourites in a Court of Equity, in which "equality is equity;" yet, inasmuch as such a deed is good and valid at law, equity follows the law, and will support it.

But a Court of Chancery will look narrowly into all the circumstances of the case ; and if they find the deed tainted in the smallest degree with fraud, they will declare it void. A preference may be given to some creditors over others; but, in giving that preference, the debtor must act bonâ fide. Independent of the questions of law arising in this case, there are strong circumstances to show that, in making this assignment, the defendant, Wheeler, did not act with good faith towards the complainant. He obtained from him an agreement to postpone issuing any executions upon his judgments until after the first of February; it was in bad faith for him to avail himself of this postponement, thus obtained, to place all his property out of the reach of an execution. It is evident that this assignment was made to defraud and injure the complainant, and to prevent his recovering his debt.

Another strong circumstance against the fairness and good faith of this assignment, is the following: The assignment directs that an old debt, due from him to F. & J. Sexton, of New York, for the sum of three thousand one hundred and twenty dollars, with interest at the rate of six per cent. from August, 1814, shall be paid; and it also recites that this debt has been assigned to Norman Porter, who now holds the same.

Now, this Norman Porter, it appears throughout this record

is one of the most intimate friends of Wheeler, and one of those favourites for whom he wished to provide in preference to the complainant. Porter's answer states, that he paid three hundred and seven dollars and fifty cents, Kentucky money, for the debt of F. & J. Sexton, in January, 1838. He began to negotiate for it in December, 1837. He purchased it without any arrangement with or suggestion from Wheeler. He had heard of the prosecution by Winter, and of Wheeler's intention to assign his property for the benefit of his other creditors, to prevent Winter from recovering the amount of his judgments ; and he therefore bought up this debt of the Sextons. The amount of principal and interest on this debt, calculating the interest at six per cent., from August, 1814, to November, 1837, is seven thousand four hundred and twenty-two dollars and forty cents; which this Mr. Porter receives, and for which he paid but three hundred and seven dollars and fifty cents.

The assignment purports to convey his property directly to the creditors named in it. There is no proof that it was delivered to any of them; and it is in proof that several of the creditors never knew of its existence.

Wheeler continued in possession of the property; it never was delivered over; this of itself is evidence of fraud. 1 Peters, 356; 4 Mason, 321; 3 Maul. & Selw. 371; 15 Johns. 571; 4 Bibb, 445, Kentucky Reports.

The assignment gives the creditors power to name a trustee to take the property; no such trustee has ever been appointed. The sale of some property to Putnam was evidently made for the mere purpose of preventing the judgment creditor from recovering his demand; and is therefore void. Cowp. 434; 1 Burr. 474; 1 Campbell, 333.

This assignment, the Court will recollect, was made but four or five days before the time during which execution was to be stayed expired, and the negotiation which brought about the assignment of this debt of the Sextons, was not entered upon by Porter until December, long after the judgments were entered : and Porter himself admits that he knew of the intended assignment by Winter, and that their debt was to be provided for. It appears that a more fraudulent attempt than this to give a prefer-

ence over a bonâ fide creditor rarely occurs. 7 Peters, 605.; 2 Gallis: 557; Pickering, 71.

Mr. Johnson, for the appellees.

The assignment of Wheeler to his creditors is charged to be fraudulent, because it was made by Wheeler without the knowledge or assent of the creditors therein named, and was never delivered to, or accepted by them.

It is contended that the fact is otherwise. None but F. L. Turner failed to give assent to it; and the mortgage funds can, under no contingency, pay his debt; and his interest in them amounts to nothing. As to all who do not admit that they did not assent, the presumption of law is, that they did assent, as the deed was beneficial and had no condition attached. See Halsey v. Whitney, 4 Mason, C. C. R. 206; Wheeler v. Sumner, 4 Mason, C. C. R. 183.

This presumption particularly applies to all the non-residents, as to whom the suit is dismissed. All others have answered, or by agreement are considered as having answered; assenting to the mortgage, or stating that they were paid before process was served.

It may not appear from the answers of some when the assent was given, but according to the practice in United States' Courts, a matter alleged but not answered must be proven on final trial. See Young v. Grundy, 6 Cranch, 52. If a more specific answer had been desired, exceptions should have been taken. All exceptions to insufficient answers are expressly waived by agreement.

In regard to delivery, it is well settled, that if a deed be delivered to a stranger for the use of the grantee, without any condition annexed making it an escrow, it is a delivery to the grantee. Sheppard's Touchstone, 58. In this case the deed was delivered to the clerk of the Fayette County Court, for the use of the grantees, to be recorded in his office. It has also been decided, that if a deed of feoffment be made to four, but only delivered to three of them, and livery of seisin made to the three for the use of all, without the assent of the fourth, and when it comes to his knowledge, he disagrees to it, still the freehold is in him, and so remains, until disclaimer in Court; and so if a deed

be made of goods and chattels, and be delivered to a stranger for the use of donee, there the goods and chattels vest in donee before notice or agreement; but in this case donee may make refusal in pais, and by such refusal the interest is divested. See Butler and Baker's case, 3 Coke's Reports, 26, 27. See also the case of Doe on dem. Garnons v. Knight, 5 Barn. & Cress. 671, for a full argument on the effect of delivery to a stranger, and for a collation of all the authorities. According to these principles, so far as the vesting of legal title is concerned, it matters not whether the grantees were consulted or knew of the deed or not; the property embraced in it was vested in them by force of the delivery to the clerk for their use until their disagreement.

In cases of deeds of trust, where the property is conveyed to a stranger, for the benefit of creditors, and these creditors not parties to the deed, it has been decided by this Court, in Marbury v. Brooks, 7 Wheat. 556; and Brooks v. Marbury, 11 Wheat. 78; Brashear v. West, 7 Peters, 608, also, in the cases of Halsey v. Whitney, 4 Mason's C. C. R. 206; and Wheeler v. Sumner, 4 Mason's C. C. R. 183, that the assent of the creditors is not necessary to the validity of such a deed; and in the case of Marbury v. Brooks, supra, an assent after a creditor had attached the goods was decided to be sufficient to make the deed valid from its execution.

The rule, that in absolute sales of chattels the possession remaining with the grantor, is a fraud per se, has been fully recognised in Kentucky; but it is equally well settled, that this rule has no application to mortgages and deeds of trust. See 5 Littell's Reports, 243; 1 J. J. Marshall, 282; 3 J. J. Marshall, 453. In Snyder v. Hitt, 2 Dana, 204, the Court say that the possession of the mortgagor is not fraudulent, and, in general, no evidence of fraud. This Court, in United States v. Hooe, &c., 3 Cranch, 73, decide, that where the deed provides for the grantor retaining possession, it is not fraudulent, and in 1 Peters, 449, the rule is held only to apply where the possession of the grantor is inconsistent with the deed.

The reason of this distinction, in Kentucky, is two-fold. 1. The possession of the mortgagor is not inconsistent with the deed: and, 2. All deeds of mortgage and of trust are required to be recorded.

The equity of redemption, or resulting trust of grantor, and his interest in freeing himself from debt, by making the property as available as possible for that purpose, are such actual and legal interests in the property, as all Courts will regard and protect, and are such interests as render it not only consistent with the transaction, but highly beneficial to all parties, that the debtor, if honest and capable, should remain in the possession of the encumbered property. He is the person best acquainted with the property and its capabilities, and his interest perfectly coincides with that of the creditors, in making it as valuable as possible.

There can be no doubt that the assignment in question is not an absolute sale, but a mortgage or deed of trust. The property is assigned for the purpose of paying the debts. Upon their payment, the property, by operation of law, results to the grantor. But, by whatever name it may be called, it is, in substance and reality, a mortgage; and Wheeler has, in the property, all the interests which are above enumerated as appertaining to the mortgagor: and there is, consequently, the same consistency of his possession with the deed that there could be were it a mortgage, in the most nicely technical sense. In the deed it is provided, substantially, that he shall remain in possession, managing the fund, until the grantees, by agent or otherwise, take possession.

In Kentucky, all mortgages and deeds of trust, whether of real or personal estate, on legal or equitable interests, are required to be recorded in offices of the County Courts. Brown and Morehead's Statute Law of Kentucky, vol. i. pages 448, 449; also, see Session Acts of 1836, 1837, page 255; also, Session Acts of 1838, 1839, page 96. These statutes would change the rule as to possession, even had it previously existed, by destroying the reason of it. In regard to chattels, the only ownership the world can know, is the continued possession. Being capable of transfer, by the most secret contracts, without the least solemnity or notoriety, purchasers and creditors could be deceived and defrauded without limit, did not the law provide for their security some visible test of ownership. The continued possession is the test as to chattels, but it is not of real estate, the title-deeds being the evidence, and, accordingly, we find the rule does not extend to real estate. In Kentucky, the notice of encumbrances is the record, and purchasers and creditors are completely guarded against being

defrauded by mortgages, &c., by an easy reference to the office of the County Court.

The property is not, however, of the character to which the rule applies. 'Consisting of choses in action, they are incapable of visible possession, and pass by assignment. So this Court held in the case of Spring v. The South Carolina Insurance Company, 8 Wheat. 268.

If a debtor gives up all he has, to bonâ fide creditors, and such all he has provided for are admitted to be, and he reserves no right, power or benefit to himself, it is impossible that this can be fraudulent. The law not only does not condemn, but approves and sanctions it. See the luminous opinion of Justice Story in the case of Halsey v. Whitney, 4 Mason C. C. R. 207; and the numerous authorities collated and ably commented on.

Mr. Justice THOMPSON delivered the opinion of the Court.

This is an appeal from the Circuit Court of the United States, for the district of Kentucky.

The bill filed in the Court below, was for the purpose of setting aside a certain deed of assignment, made and executed by the defendant, Wheeler, for the purpose of securing to certain enumerated creditors the avails of his property, to the exclusion of the complainant; and that the complainant may be decreed to have satisfaction of his judgments set out in the bill, out of the property conveyed by the deed.

The bill sets out, that at the November term of the Circuit Court of the United States, in Kentucky, in the year 1837, the complainant recovered two judgments against Leonard Wheeler; one for the sum of four thousand dollars, with interest, from the 21st of February, 1814; and the other for eight hundred and ninety-one dollars and fifty-three cents, with interest for the same time; upon which judgments executions were not to issue until the 1st of February, 1838: at which time executions were duly issued, and put into the hands of the marshal of the district to be executed; upon which the marshal returned, that he found no property of which to make the money on the executions.

The bill further states, that on the 27th of January, 1838, the said Leonard Wheeler, by deed of trust or assignment, made a conveyance to certain of his preferred and specified creditors (of

K 2                                    15

which the complainant was not one) of certain property therein specified, to pay and discharge certain specified debts, which deed was duly acknowledged and recorded in the proper county; and the bill charges, generally, that this deed is fraudulent and void. It particularly charges, that the deed was made without the knowledge, privity, or assent of the creditors named therein, and who are the parties to whom the deed is given. That the deed was never delivered to, nor accepted by the grantees. That it was made with intent to deceive and defraud his just creditors, who were not included in its provisions. That the possession of the property conveyed by said deed, was retained by the said Wheeler, and never delivered to the parties of the second part, or any one of them. That the deed was lodged in the clerk's office for record after the rendition of the complainant's judgments, and but a short time before he was authorized to issue execution upon his judgments.

It further charges that the sale of the goods to Joseph Putnam, one of the creditors named in the deed of trust, was fraudulent, and without any valuable consideration; and that the business was afterwards conducted in the name of the said Putnam, but for the use in whole or in part of the said Wheeler.

It further charges that Joseph Swift, another defendant, has for several years past been employed in carrying on the grocery business, in which the said Wheeler was interested; and that the said Swift is now in possession of goods, or money, or other property, belonging to the said Wheeler, or is indebted to him for the same.

It also charges that Norman Porter, another of the preferred creditors, had money in his hands belonging to the said Wheeler, and to be used for his benefit; and that the note mentioned in the said deed of three thousand one hundred and seventy dollars, was purchased by said Porter for Wheeler's benefit, and with his money.

The bill likewise prays, that Abel Wheeler, one of the preferred creditors, may answer and state particularly, whether he has at any time lent and advanced to Wheeler money or other property, and whether he now holds any note, or memorandum, or other evidence of debt against him.

The bill prays that the said Leonard Wheeler, and the above

mentioned preferred creditors, may answer specially, and particularly to the several interrogatories put in the bill, in reference to the transactions between them severally and respectively.

The several answers of Leonard Wheeler, Porter, Putnam, Swift, and Abel Wheeler, contain a full and explicit denial of all the charges contained in the bill, tending in the least manner to sustain the allegations of fraud or collusion, or any secret or unfair transactions between them, or either of them, with Leonard Wheeler. And there is no proof offered to sustain these allegations; they may therefore be dismissed as wholly unsupported.

The bill calls upon the said Leonard Wheeler to state how and to whom he delivered the deed of trust; in answer to which he states, that every creditor provided for by the deed, was a real and bonâ fide creditor. That he consulted with a number of his creditors, naming them, before making the deed; all of whom approved of it; and that he knows of none who disapproved of it, or rejected the benefit of its provisions; and some of them have accepted of it in writing, which appears by the exhibits annexed to the answer. That, being satisfied with the propriety of the measure, he made and executed the deed, and left it in the proper office, to be recorded for the use of his creditors. He admits that the funds, mentioned in the deed of trust, remained in his possession; and that the creditors have never availed themselves of the privilege of appointing a trustee; having confidence, as he presumes, in the correctness of his management of the business. And he further states, that he has gone on in collecting the choses in action, and paying over the proceeds to the creditors, according to the provisions of the deed of trust.

The answer of Wheeler with respect to the delivery of the deed, and the possession and management of the funds, is corroborated by the answers of a number of the creditors, who are made parties, and called upon to answer on these points. They say, that they were consulted before the deed was executed, and approved of it then; and accepted it when made. That no trustee has been appointed, because they had full confidence in Wheeler, and desired him to continue in the management of the business.

There are several amended bills, with the answers thereto,

bringing up some new matters, but not of sufficient importance to require any special notice. The above statement of the bill and answers presents all the material questions which arise upon the merits of this case.

It is deemed unnecessary to notice the objections made to the jurisdiction of the Court below, either on the ground that Elisha I. Winter, the real party in interest, should have been made the party complainant in this suit; or that there is a want of proper parties, defendants, to enable the Court to make a decree upon the merits. The conclusion to which we have arrived supersedes the necessity of considering these questions.

Although the right and power of a debtor to give a preference to some of his bonâ fide creditors, to the exclusion of others, has not been denied on the part of the complainant; yet, it has been urged, in argument, that such preferred creditors are no favourites in a Court of Chancery, where it is said equality is equity; and that a Court of Chancery will look narrowly into all the circumstances, and if it is found that the deed is tainted in the smallest degree with fraud, it will be declared void. And it has been insisted, that in the present case there are strong circumstances to show that in making this deed of trust, the defendant Wheeler did not act in good faith towards the complainant. That he obtained from him an agreement to postpone issuing executions upon his judgments until after the first of February; and that a few days before that time he made the assignment in question, so as to put all his property out of the reach of the executions; and that this was in bad faith, which ought not to receive the sanction of a Court of Equity. It may be observed, in the first place, that there is no evidence of any deception practised by Wheeler to lull him to sleep, or procure any delay in issuing executions on the judgments. It was done in the ordinary course of judicial proceedings. And if the principle be sound, that a debtor may lawfully apply his property to the payment of the debts of such creditors as he may choose to prefer, he may certainly elect the time when it is to be done, so as to make it effectual. And such preference must necessarily operate to the prejudice of creditors not provided for; and cannot furnish any evidence of a fraudulent intention. But the circumstances of the present case are such as not only to remove all ground for any charge of fraud,

but even of injustice or unfairness in the conduct of Wheeler. Although it may be admitted that John Tompkins is properly made complainant, yet it is manifest from the record that he is a mere nominal party, and that Elisha I. Winter is the real party in interest. This is shown by the answer of Wheeler, and proved by the testimony of William Fellows; who swears that in the latter part of 1836, or the beginning of 1837, Winter, through his agent, applied to him, to purchase the claim of Tompkins, which had been sent to him for collection. That he offered one thousand dollars for it, which was not at that time accepted. That in the summer of 1837, Winter himself made the same offer which his agent had made; and again, in the fall of 1837, he renewed the offer of one thousand dollars, and expressed his opinion of Wheeler's condition, when, with the opinion of some others, who he supposed knew Wheeler's circumstances, he in the month of October, 1837, sold the claim to Winter for one thousand dollars; believing that he was purchasing it for the benefit of Wheeler. That, a few days after the sale, he received a written request from Winter not to let it be known that he had the control over the claim. Thus we see great anxiety in Winter to purchase a claim against a man embarrassed and in failing circumstances; and the consideration paid for it shows that the claim must have been considered almost desperate. Only one thousand dollars given for a claim which, by the judgments stated in the complainant's bill, including interest, amounted to between eleven and twelve thousand dollars. These circumstances, independent of the statements in Wheeler's answer, are calculated to cast some suspicion upon the conduct of Winter, and to justify the inquiry, whether he comes into Court with clean hands, and can justly reproach Wheeler with bad faith and unfairness towards him. Wheeler's circumstances were extremely embarrassed, if not desperate, and he found impending over him two judgments amounting to nearly twelve thousand dollars, in the hands and under the control of Winter; who he had certainly no reason to believe was friendly to him; and which judgments, if they could have been enforced to their full amount, would have swallowed up a great proportion of his property. Was he not, under such circumstances, authorized, by every principle of justice and honesty, to secure as far forth as he could his bona

fide creditors? That the debts of all the creditors preferred in the deed of trust are bonâ fide debts, is fully established; not only by the proofs, but is admitted on the record, by an agreement which, among other things, states, "that the genuineness of the debts provided for in Wheeler's assignment will not be contested or called in question on the argument."

That a debtor has a legal right to prefer one or more of his creditors over others, when the transaction is bonâ fide, is not an open question in this Court. That point was settled in the case of Marbury *v.* Brooks, which came twice before the Court under circumstances somewhat different, and is reported in 7 Wheat. 556, and in 11 Wheat. 78. That this assignment was a bonâ fide transaction between Wheeler and his preferred creditors, is clearly established by the proofs. Every allegation in the bill, suggesting fraud or collusion, is fully met and denied by the several answers, and is wholly unsupported by any proofs.

But several objections have been taken to the legal effect and operation of this deed, on other grounds than that of fraud.

That it was made by Wheeler without the knowledge or consent of the creditors therein named. That it was never delivered to or accepted by the creditors. That possession of the fund was retained by Wheeler, and no trustee appointed according to the provisions of the deed.

Some of these objections are not founded in fact. It is true that it does not appear that all the creditors had any knowledge of the deed before it was executed. But it does appear from the answer of a number of the creditors named in the deed, that they were advised of the necessity of Wheeler's securing them, and informed of his intention to secure them before the deed was executed, and approved of it; and accepted the benefits of its provisions; and since that time have been paid their debts, in full. And there is no evidence that any one dissented. F. S. Fuller says, he was never consulted with about making the deed, or informed of it before its execution; and that he has never accepted of its provisions. But he does not say that he has ever refused to accept of the provisions in his favour; and he may not therefore have precluded himself from still accepting. This deed is absolute upon its face, without any condition whatever attached to it; and being for the benefit of the grantees, the presumption

of law is, in the absence of all evidence to the contrary, that the grantees accepted the deed. In the case of Marbury v. Brooks, it is said by the Court, that an assignment for the benefit of preferred creditors is valid, although their assent is not given at the time of its execution; if they subsequently accept in terms, or by actually receiving the benefit of it. Deeds of trust, say the Court, 11 Wheat. 96, are often made for the benefit of persons who are absent, and even for persons who are not in being; whether they are for the payment of money or for any other purpose, and no expression of the assent of the persons for whose benefit they are made has been required, as preliminary to the vesting of the legal estate in the trustee; such trusts have always been executed on the idea that the deed was complete when executed by the parties to it. The omission of creditors to assent to the deed, or to claim under it, may, under suspicious circumstances, afford some evidence of fraud. But real bonâ fide creditors are rarely unwilling to receive their debts from any hand that will pay them. It is not true that the deed remained in the possession of Wheeler; it was sent to the clerk's office to be recorded. It was, of course, placed in the hands of the clerk, to be recorded for the uses and purposes expressed in the deed, and of course for the benefit of the creditors named in it. It was put out of the possession and control of the grantor. The grantees in the deed are numerous, and all could not have the actual possession of it. It is laid down in Sheppard's Touchstone, 58, that if a deed be delivered to a stranger for the use of the grantee, without any condition annexed, making it an escrow, it is a delivery to the grantee. The delivery to the clerk to be recorded, may well be considered as falling within this rule. This principle is fully recognised in the case of Doe v. Knight, 5 Barn. & Cress. 692, that a delivery of a deed to a third person, for the use of the party in whose favour it is made, where the grantor parts with all control over the deed, is effectual, and operates from the instant of such delivery.

If the fund had remained in the possession of Wheeler for his own benefit, it might have cast a suspicion upon the fairness of the transaction; but there is no proof of any such object or design, or of any fact from which an inference of mala fides can be drawn: but on the contrary, the object of his continuing in the possession of the property is satisfactorily accounted for by the

[Tompkins v. Wheeler.]

circumstances of the case. It consisted principally of unsettled accounts, and choses in action, which he was much more competent to settle than a stranger could have been. It was, therefore, for the benefit of the creditors that he continued to settle up these accounts and pay over the money to his creditors, as the proofs show that he did. This was by the express consent of some of the creditors, and the presumed consent of all, as no dissent or complaint appears to have been made by any; and no one had any right to complain but the parties who were to receive the benefit of the assignment. This possession was held at the will and pleasure of the creditors, which they could have withdrawn at any time, if dissatisfied with the management of Wheeler; and this was a substantial compliance with that part of the assignment which relates to the appointment of an agent, or trustee, for the purpose of executing and fulfilling the trusts and purposes of the assignment. The creditors were, of course, to be the judges of the fitness and competency of such agent, or trustee; and they were the only parties interested in the faithful discharge of his duties. No formal appointment was necessary; an express or implied assent of the creditors to Wheeler's acting as agent, or trustee, was all that could be required, according to the fair interpretation of the assignment

We are, accordingly, of opinion, that the decree of the Circuit Court, dismissing the bill without prejudice, be affirmed.

Decree affirmed.