Mr. Justice IIagner
delivered the opinion of the court.
The first step in these cases was a bill filed by Morrison, Harrimon & Co., against the defendants, on the 16th of September, 1879. It alleged that the complainants were *192 wholesale dry goods merchants in the city of Philadelphia ; that the defendant Henry C. Shuster was a retail dry goods dealer in Washington city ; that for neaidy a year he had been purchasing, from time to time, goods from the complainants; that on four occasions, named in the bill, the first in May and the last in August, 1879, the complainants had furnished him with large quantities of dry goods, which had been received by him and placed on the shelves in his store ; that about the tenth of September they received a communication from him stating his belief that he would be unable to meet his notes, not yet due, for the goods so furnished-The bill then charged that for the previous six months ITenry C. Shuster had been, in fact, insolvent; that he knew such to be his financial condition, and had obtained the goods from the complainants knowing his inability to pay for them that under these circumstances there was no valid contract of sale between the parties, and the complainants were advised that they were entitled to demand the re-delivery of their goods ; that they accordingly made this demand upon Henry C. Shuster, but he refused compliance, and forthwith executed to the defendants, William M. Shuster, jr., and Daniel Larrabee, an assignment in writing of all his property, including the said goods of the complainants, by which the assignees were empowered to make sale of the effects conveyed, and collect all debts due to the assignor, and from the proceeds to pay, in the first instance, to his brother, William M. Shuster, about $1,700, and to his mother-in-law, Mrs. Emily Fuller, $600 ; and out of the residue of the proceeds, after defraying the expenses of the trust, to pay pro rata the claims of such of his other creditors as should agree to execute full releases to him of their claims ; and that the pro rata share which would be payable to any creditor who might refuse to execute such release, should be paid over to the grantor ; that this assignment wras void by reason of the requirement therein of releases, and the resignation of part of the proceeds to the grantor ; that the defendant had so mixed the goods thus obtained by him from the complainants with other goods in his store, that it *193 would be extremely difficult to separate them, and hence they were remediless by action at law to obtain possession of their said property.
The bill prayed that the assignment might be declared void as against the creditors of Henry C. Shuster; that a receiver might be appointed to take charge of the said goods, and hold the credits and other .property' of Henry C. Shuster ; that the defendants might be enjoined from proceeding to carry said assignment into effect, and that the complainants might have such other and further general relief as their case might require.
The bill is not framed as was contended, in conformity with the proceedings in the case of the Idaho, 93 U. S., the circumstances of that case being quite different from those disclosed in the present: But it seems to be justified in its general features by the proceeding in the case of Hyde vs. Ellery, 18 Md., and in the case in 42 Ga., 46, Cohen vs. Myers.
It is worthy of remark, however, that there is no charge in the bill that the alleged confusion of the goods of the complainants with those of the defendant, Henry C. Shuster, was fraudulent or wrongful; and as the Supreme Court, in the case of the Idaho, in announcing the law upon this subject, remai’ked, that “ it is not enough that such confusion should be accidental or even intentional; it must also be wrongful, to justify the interposition of a court upon that ground,” the bill might, perhaps, have been demurrable for the want'of such an allegation.
A restraining order was passed as prayed. The answers of all the defendants were filed, denying emphatically and in the amplest terms the various supposed equities of the bill. Although the bill did not call explicitly for answers upon oath, it prayed that the defendants might answer, &c., which is certainly not equivalent to an agreement to dispense with answers under oath. Under such circumstances the familiar and well settled principle applies, that where an answer is responsive to the charges of the bill and swears away its equity, the denials of the answer must prevail, and the bill *194 will be dismissed, unless the defendants’ statements are contradicted by the testimony of two witnesses, or of one witness with pregnant corroborating circumstances.
In the case at bar, the complainants have presented no witness at all to overcome the denials of the answers. The only testimony is that produced by the defendants, and the evidence of Henry C. Shuster, taken before the examiner, confirms the denials of his answer in every particular. Under these circumstances there could be no question that the prayer of the bill for the redelivery to the complainants of the goods must be denied. 19 Md., 172, Blonheim vs. Moore.
But it is insisted that the court may, under the prayer for general relief, proceed to direct payment to the complainants of the value of their goods out of the proceeds of sale now in court. But it is obvious that the sole theory upon which the complainants’ bill was filed was that they were not creditors of Henry C. Shuster; that the transactions between the parties with reference to the last four shipments of goods did not constitute a sale in the legal sense of the term, because Henry C. Shuster had no honest purpose^ the time he received the goods to pay for them, since he knew he was insolvent, and had no expectation of being able to pay for them; and, in accordance with this theory, by the order of October 7,1878, appointing the assigneees as receivers and authorizing them to sell thé property, the receivers, at the request of the complainants, were particularly required to keep separate the proceeds of the property so claimed by the complainants.
It is settled that under a prayer for general relief the complainant can only claim relief of the same general nature as that prayed in the bill, that the claims under the general relief clause must be consistent with the particular relief claimed, and that different parts of the bill cannot claim relief upon principles diametrically opposite. A plaintiff cannot “ blow hot and'cold ” in the same bill in such manner. The court say in Evans vs. Iglehart, 6 Gill & Johnson, 171: “ Claims must be consistently urged. A party cannot be pursued for the value of the property, and then when the *195 property is found to be more valuable than supposed, be, pursued for the property itself.” Especially would this principle be observed in chancery courts, where the special prayer for relief is grounded upon allegations of fraud, in fact. 15 Howard, 56, Eyre vs. Potter; 7 English Common Law, 260.
But it is urged that the bill is also framed as a creditor’s bill, and that under this feature jurisdiction may be maintained notwithstanding the denials of the answer and the absence of proof of the particular charges. The statement in the bill, which it is supposed converts iti into a creditor’s bill, is in these words: “The complainants sue as well for themselves as for all other creditors of Henry C. Shuster similarly situated; who may come in and contribute to this suit.” But this addition to the original frame of the bill is too inconsistent with its general structure to be considered as a ground of relief. The complainants claim upon the distinct ground that they are not creditors, and upon that hypothesis allege that they are entitled to recover back in kind the goods of which Henry C. Shuster had by fraud possessed himself. Whereas, the phrase referred to says that the bill is filed for the complainants, and for “all other creditors ” of Henry C. Shuster “ similarly situated.”
No person who is a creditor of Henry C. Shuster can be similarly situated with those whose special ground for equitable interference is that they are not creditors at all. A creditor’s bill in equity originally was designed to effect a final and complete distribution of the estate of a deceased person; and it is only by analogy that they are tolerated iti -the cases of living debtors, where the effort is to subject a particular property to the payment of general debts. 2 Harris & Gill, Strike vs. McDonald. But the most lenient construction of the rules governing such proceedings would not tolerate a bill like the present, where the effort is to combine claims so entirely inconsistent, as that of complainant insisting that the defendant has dishonestly possessed himself of property belonging to them, a return of which is sought, with the contention by the same complainants, that *196 they had sold the very goods to the defendant, and are therefore creditors who have a right to subject to their demands the same property as equally belonging to the debtor, with his other assets.
The court below, as we have said, on the 14th of October, passed an order directing the assignees, as receivers, to sell the assigned property and bring the proceeds into court; and by the same order all the creditors of the defendant Henry 0. Shuster were granted permission to become parties to the suit. Under this permission Neale & Oo. and Phillips Bros. & Go., filed petitions, alleging the recovery of judgments by them against Henry 0. Shuster since the filing of the bill, praying that they may might participate in the proceeds, and asking that their judgments might be held to be liens upon the funds returned by the receivers and then in the court. On the 30th of January, 1880, these judgment creditors filed a, supplemental bill praying to be made parties complainant, and alleging that since the filing of the original bill, namely, on the 11th of October, 1879, Henry C. Shuster had executed a second assignment to William M. Shuster, jr., and Daniel Larrabee, which recited the execution of the first assignment, and claimed that, notwithstanding the proceedings in the case, he had the right to amend the former assignment in particulars in which it was supposed to be invalid; and he accordingly conveyed to the said assignees all his property of every description, upon trust to sell the same as in the former deed, and, after paying the preferred debts to William M. Shuster and Mrs. Fuller, to distribute the residue pro rata among all the creditors of the grantor without any reservation of releases. And the supplemental bill alleged that this second assignment was also void, because at the time it was executed the injunction was in force, which prohibited Henry 0. Shuster from executing any such paper, and because the property therein assigned was at the time in the possession of the court; and for the further reason that the assignees under the first deed did not join in the execution of the second, and on these *197 grounds it was insisted the second deed was an unlawful attempt to modify the first.
It is contended upon the part of the complainants that the proceeding in the case No. 6,962 should be maintained, even if they were originally materially faulty in themselves, because these supplementary proceedings, which it is supposed are correct, were engrafted upon it. But it is quite plain that the evils existing with respect to the original bill filed by Morrison & Co., cannot be cured by anything in the supplemental bill filed by Neale & Co. and Phillips Brothers & Co. These parties, though not judgment creditors at the filing of the original bill, did not pretend that they had not sold their goods to Shuster; they made no claim to recover back their goods in specie, and there was no prayer to set-aside, the assignments in behalf of creditors generally. The fact that these claimants afterwards obtained judgments would not be effective to confer jurisdiction in the original ease, if it did not exist when the bill was filed.
In 31 Miss., 455, Brown vs. The Bank, the court announces the well-known principle, that if a court has no jurisdiction when the bill is filed, the recovery of a judgment afterwards cannot be set up by a supplemental bill so as to confer the jurisdiction. The supplemental bill in this case, therefore, falls with the original. We are of opinion that the original bill should be dismissed and the complainants be required to pay all the costs in the case, except such as may have directly grown out of the performance by the receivers of the duty reposed in them by the court’s order.
On December 22d, 1879, Wernwag and others, creditors of Henry 0. Shuster, filed a second bill against the same defendants, No. 7,093, equity. They alleged the recovery by them of judgments against Henry C. Shuster since the execution of the last deed of assignment, and prayed that both deeds should be set aside, the first as fraudulent, because of the reservation of releases, and the second for the same reasons stated in the supplemental bill of Neale & Co. To this second bill answers were filed by the defendants, and *198 the testimony taken in the first case is, by agreement, to be considered in the present.
It is plain that the first assignment was fraudulent in law, for the reasons alleged against it; but under the order of the court of the 11th of October, 1879, the persons named as assignees in that deed were constituted receivers of the court, and they reported to the court an offer to. sell the entire personal effects in the store to Lansburg & Co., for a designated sum, and the court directed them to make the sale, and to bring the proceeds into court, which they have done.
It was after this sale had been made and ratified, that the second deed was executed, and the questions ai’ising under the second bill are whether the last deed is effective in itself or whether it can have such an amendatory effect upon the first as to cure the informalities of that instrument.
1. It is insisted that the second deed will be held void by the court because it was executed in contempt of the injunction existing at the time. This renders it necessary to inquire as to what was the scope and extent of the injunction. The judge, in his order, decreed that: “ Henry C. Shuster is enjoined as prayed in the bill, and that the other defendants are enjoined as assignees, as prayed for, except as hereinafter provided.” And the order then proceeds to direct these receivers to take possession'of all the personal effects of Henry C. Shuster referred to in the first deed and sell them and bring the proceeds into court; and the concluding sentence of the order is: “This order is without prejudice to any of the rights, interests or equities of the parties or of the said creditors of, in and to the property aforesaid.”
It was manifest that, by the terms of this order no injunction was intended to be maintained in force against the receivers, since by its very words they were directed to do that thing which the bill prayed they should be restrained from doing, viz., intermeddling with the goods.
The second deed of assignment had no purpose to interfere injuriously with the title of the receivers. Its only object could be to ratify and confirm their title. The deed was therefore in aid of the object of the order of the 11th *199 of October, since if the original assignment was informal it might be supposed that that informality would affect the fullness of the title of the assignees, and impair the rights of Lansburg & Co., the purchasers. The purpose of the first bill asking that Henry 0. Shuster should be enjoined from intermeddling with the property was to prevent him from interfering with it to the •prejudice of the complainant, or of persons who were the creditors of Henry C. Shuster. It certainly was not designed to be taken literally so as to subject him to punishment as for breaking an injunction for every possible interference with the goods — if he had moved them in the event of a fire or flood to a place of security; or, if in' order to perfect the title of the assignees, he had procured the execution of a second deed by his wife. The second assignment, therefore, so far as being in contempt of the injunction, was a commendable act upon the part of the assignor. But the last clause of the order shows it was passed without prejudice to any of the rights, interests or equities of any of the parties to the property. And this clause was referred to by Henry C. Shuster, in his answer, as a justification of this attempt to perfect the previous deed. It was in fact but a more formal reiteration of his purpose-as disclosed in his answer to the original bill, where he stated that the clause requiring releases, in the first deed was placed there inadvertently and in ignorance of its illegality, and that he expressly disclaimed any benefit or advantage under it, and consented that all his property should be divided equally among his creditors after the payment of the two preferred ■debts.
But apart from this, the dismissal of the first bill deprives any parties of the right to insist that the execution of the second deed was in contempt of the injunction. Even if it •could have been so considered, if that bill had been sustained,' it cannot be viewed in that light, since its dismissal. If the complainant himself had dismissed it, no one could be. heard now asserting that the second deed was in contempt of an injunction which had become inoperative by the complainant’s own act; and we hold the same result follows from its *200 dismissal by the court. The mere fact of the lis pendens apart from the injunction could not invalidate such a conveyance. Says Chancellor Kent. 2 Com., (632), “a debtor,, pending a suit, may assign to trustees all his effects for the benefit of all his creditors and deliver possession, and it will be valid.”
2. It is said that the second assignment is invalid, because it is not signed by the assignees. We do not understand that this formality is essential; and the authorities in section 267 of Burrill on Assignments establish this position. It is quite enough, as is stated in Perry on Trusts, section 260,. if the assignees accept the second deed. And it is admitted by a petition of Morrison & Co., in the first case, filed iñ January, 1880, praying process of contempt against Henry C. Shuster for executing this second deed, that “ the trustees have undertaken to accept its provisions,” and the same allegation is made in the supplemental bill filed by Neale & Co. We can see nothing of force in these objections to the second deed.
3. Does the second deed amend the errors of the first? A careful examination of the authorities satisfies us that such is its effect. In 17 Wis., 187, the court, speaking of a case like the present, say: “It being entirely competent for the assignees to reconvey to the grantor, and then take a recon-veyance, notwithstanding the validity of the first assignment, there does not seem to be anything so essential in the mere formal process of a double reconveyance, which would only get the title back where it started from, that the lack of this proceeding should compel a court of equity to defeat the trust.” So in 28 Ver., 155, the court state that an amendment of a second deed under such circumstances is not only allowed, but commendable, and that it might be made by a mere declaration of trust without a formal deed. That case was almost identical, in many of its features, with the one at bar. To the same effect are the cases in 15 Johnson’s Reports, 583, Murray vs. Riggs; Ingraham vs. Wheeler, 6 Conn., 277; Burrill on Assignments, section 350.
In 2 Black., 534, the isolated sentence relied upon by com *201 plainant’s counsel, does not properly admit of the signification endeavored to be given to it; and in the case in Porter vs. Williams, 9 N. Y., 143, where a second assignment was held ineffective, it appears from the report that the court based its opinion upon the distinct fact that between the date of the two assignments judgments had been recovered by creditors, and they refused to allow the second assignment validity against these intervening rights by judgment. But in the case at bar no creditors had obtained any liens between the two assignments, and there is no pretence that the commendable attempt of Henry C. Shuster to better the title he had already given to the assignees, for the benefit of his creditors, has worked any harm to any creditor.
In our opinion the second assignment should be taken as a curative of the defects of the first, and not as establishing any additional or further priorities beyond those specified in the first deed. Hence the provisions in the second deed increasing the amounts of the preferred claims of Mrs. Puller and William M. Shuster over the sums named in the first deed, by the addition of the interest, at an increased rate, cannot be operative against the statements of the same preferred claims in the first deed. In the same manner the statement in the second as to the particular percentage to be paid to the assignees for commissions cannot be operative against the general provision on the subject in the first deed.
The function of the second deed, then, is simply to render valid and effective the provisions of the first assignment.
4. It is insisted, however, that the first deed, as thus aided by the second, should be held void, because of the preferences it gives to the brother and mother-in-law of the defendant, Henry C. Shuster. It is perfectly well settled that a debtor, in insolvent circumstances, by assignment of his estate in trust made in good faith, when no law or lien prohibits it, may lawfully prefer one creditor or set of creditors to another. 2 Kent, 532; Murray vs. Riggs, 15 Johnson, 571.
Upon plain principle of common sense there would seem to be no reason why this should not be. A debtor in failing circumstances may take money from his drawer and pay in *202 full any creditor who in his opinion has an especial claim upon him. He may equally pay. him by handing over to him some article of property, as a horse and wagon, or he may verbally authorize the creditor to sell it and pay himself from the proceeds. And this he may equally authorize him to do by a writing. Says the Supreme Court of the United States, 16 Peters, 116: “And if the principle be sound that a debtor may lawfully apply his property to the payment of such creditors as he may choose to prefer, he may certainly elect the time when it is to be done, so as to make it effectual. And such preference must necessarily operate to the prejudice of creditors not provided for, and cannot furnish any evidence of a fraudulent intention.”
In that case it was alleged that the debtor had succeeded by his deed in putting off' executions which were impending .against him. “Wheeler’s circumstances were extremely ■embarrassed, if not desperate, and he found impending over him two judgments amounting to nearly $12,000, in the hands and under the control of Winter, whom he had certainly .no reason to believe was friendly to him, and which judgments, if they could have been enforced to their full amounts, would have swallowed up the greater portion of his property. Was he not, under such circumstances, authorized by every principle of justice and honesty to secure as far as he could his bona fide creditors?”
The question recurs, were these preferences honest and fair? They were made to relatives, and this circumstance undoubtedly is of an unfavorable import. Such preferences are more readily assailed than those made in favor of strangers. But there is not a scintilla of proof in the case that those debts are not honestly due to preferred creditors. On the contrary, it distinctly appears that the money thus attempted to be secured was lent by them to Henry 0. ■Shuster when he entered into business, and that with it he paid some of these very creditors for the goods originally purchased when he opened his store ; and that he might reasonably consider himself, under the circumstances, especially bound in good faith and honor to see that these persons who *203 bad trusted him without security under such peculiar cir-stances, should not be the losers.
The only testimony to which we have been referred at .■all as tending to support the suspicion of mala fides, is to be found in the cross-examination of Henry C. Shuster, and we-fail to see in that anything to justify the aspersion cast upon the honesty of his actions in this matter.
The case in 68 N. Y., 1, cited by the complainants’ counsel, where an application was made for trustee process under the statute of the State upon the allegation that the debtor had purchased the goods with fraudulent intent, shows that the utmost extent to which the court went was to say: “Where the vendee purchases property on credit, knowing he is insolvent, without disclosing the fact, and with intent not to pay fior the property, fraud may be affirmed.” And the opinion declared that the facts there were such that a presumption of his intent not to pay might be inferred.
But the mere silence of a defendant as to his financial •condition at the time of sales to him by complainants, even if he had then known himself to have been insolvent, is not sufficient to warrant a rescission of the sales for fraud. An honest though abortive purpose to continue business and pay for goods bought, is consistent with the vendee’s knowledge of his insolvency, and the purchase is not fraudulent when made with such intent, though founded in delusive and unreasonable expectations.
In 4 Chan. Appeal, 625, Alton vs. Harrison, decided in 1869, where a deed securing five enumerated creditors,' reserved the property in the hands of the grantor for six months, and excluded all other creditors, it appeared that the debtor at the time knew that a writ of sequestration was about to issue against him. The court say: “If the deed’ -was executed by Harrison honestly, for the purpose of giving a security to the five creditors, and was not a contrivance resorted to for his own pei’sonal benefit, it must have effect.”
In the case of Powell vs. Bradlee, 9 G. & J., 245, the fourth prayer of the defendant was in these words: “If the jury, believe that at the time Tyson & Morris made the purchase *204 of Powell, they were largely insolvent, and knew themselves to be so, and concealed such insolvency, and the said Powell neither knew of such insolvency nor had the means of knowing it, then the sale is void.” The appellate court said : “We do not think the court below erred in refusing the foui’th prayer of the defendant. The prayer seems to have been founded on the idea that the sale was fraudulent, if the vendees knew themselves to be insolvent at the time of the purchase and did not communicate that circumstance to the vendors ; knowing at the time that they were ignorant of the fact and had not the means of becoming acquainted with it. The law it seems does not sanction such an elevated tone of morality in mercantile dealings as would have warranted the granting of the prayer to the extent asked for by the defendant. Such a strict and rigid doctrine, considering the vicissitudes and changes incident to mercantile life, would go far to cramp the operations of trade and commerce, and has not received the countenance of courts of justice either in this State or elséwhere, as far as we have been able to ascertain. Moreover, the proceeds of the property purchased might have enabled them to fulfill their contract, and from anything which appears might have been intended to be applied to that purpose. There must have been an intent not to pay at the time of the purchase.”
If it be true that ninety per cent, of all merchants fail at some time of their mercantile lives, it surely is not astonishing that a man in Henry C. Shuster’s position might honestly have supposed himself able to go on with his business notwithstanding his existing embarrassments, and we cannot see that anything more unfavorable can be imputed to him than bad management in this his first business venture.
It follows from these views that we sustain the provisions of the first assignment as ratified and corrected and amended by the second. In accordance with this' decision the two preference creditors will be paid the amounts specified in the first deed, and other creditors of Henry C. Shuster are admitted to participate pari passu in the distribution of the residue after the payment of • the expenses of - administering *205 the trust. The bill of "Wernwag and others, .No. 7093, is dismissed with costs; and the assignees appointed by the order of the 11th of October, 1880, as receivers, are retained, and are required to settle their accounts in this court, upon the principles herein set forth.
Mr. Chief Justice Cartter dissented from the conclusion of the Court.