# SMITH *v.* HERRELL.

ASSIGNMENT FOR CREDITORS; ASSENT OF CREDITORS; PRESUMPTIONS; ATTACHMENT.

1. An assignment by a debtor to a creditor of a fund due him under a contract with the District of Columbia for the erection of school buildings, with directions to the assignee after paying his own claim, to distribute the residue among certain other creditors, passes the legal title to the fund and creates a trust for the creditors named although at the time some of them had no knowledge of the transaction and did not assent thereto.
2. In such case, the presumption of law is, in the absence of all evidence to the contrary, that the parties accepted the benefit of the assignment.
3. And in such case, the residue of the fund in the hands of the assignee is not subject to attachment by other creditors of the assignor, especially where such residue was not sufficient to discharge the claims of creditors named in the assignment who were present and agreeing to the disposition, and who in order to effect it withdrew their claims previously filed under a regulation of the District, thus making the assignment to stand upon a valuable consideration as to them.

No. 688.  Submitted October 12, 1898.  Decided November 9, 1898.

HEARING on an appeal by a plaintiff in attachment from a judgment entered upon a verdict directed by the court in favor of a garnishee.  *Affirmed.*

THE COURT in its opinion stated the case as follows:

This is an appeal from a judgment rendered as issues arising out of a writ of garnishment. The appellant, Thomas W. Smith, had a judgment against Monroe and obtained an attachment thereon October 12, 1896, upon which, on the same day, the marshal attached credits in the hands of the appellee, John E. Herrell, and served him with the usual interrogatories as garnishee. Herrell, under

oath, denied indebtedness to Monroe, and issue was joined thereon. At the close of the evidence, the court directed a verdict for the garnishee.

It appears that Monroe had been the contractor with the District of Columbia for the erection of certain schoolhouses, and had become involved in debt. He was indebted to Herrell in the sum of $4,608.71, for money advanced to complete the buildings, pay labor, and so forth. There was an arrangement between Monroe, Herrell and the Auditor of the District that the checks to Monroe for the money due him should be paid to Herrell. The two parties went to the Auditor's office on October 10, 1896, to receive the checks. They were accompanied by Campbell, White and Schneider, to whom Monroe was indebted, severally, for material and supplies used in the performance of the contract. There had been immediately before this, a great number of small claims for material and supplies furnished to Monroe, for the same purpose, filed with the Auditor. These amounted to the sum of $1,447.54. In accordance with a regulation of the District, that seems to be incorporated in all such contracts, the Auditor announced his intention to withhold the checks until the foregoing claims and others should be paid or withdrawn. Campbell, White and Schneider had also filed their claims with the Auditor, but agreed to, and did, withdraw them in consideration of the agreement hereafter recited. It was then agreed between Monroe and Herrell, the others consenting, that Herrell should pay the small claims in full, receive the checks, and make the following disposition of the money : Pay himself in full for all advances, and pay the remainder *pro rata* to eleven other named creditors, among whom were Campbell, White and Schneider. The Auditor then received Herrell's check for $1,447.54, to cover the smaller claims under the agreement, and delivered the checks due Monroe, who then and there indorsed them to Herrell.

The checks received and cashed by Herrell amounted to

D. C.]                    Argument of Counsel.

the sum of $9,524, and after deducting the last advance
and the former sums due him, there remained for distribu-
tion the sum of $3,469.   On the same day, and in execu-
tion of the verbal agreement and direction, Monroe gave
Herrell a writing signed by himself, saying: "Please pay to
yourself $4,608.71, and pay the balance *pro rata* to the fol-
lowing claimants according to the amount of bills approved
by me."

A list of eleven creditors is attached and includes the
names of Campbell, White and Schneider.   The remaining
eight creditors had no knowledge of this assignment before
the attachment was issued and served.

The sums due by Monroe to the creditors named as bene-
ficiaries amounted to $8,872.99, and no attack has been
made upon any one of them as fraudulent or excessive.
They were all on account of materials furnished Monroe in
the performance of his contract for the erection of the
schoolhouses.

*Mr. Clarence A. Brandenburg* and *Mr. S. T. Thomas* for the
appellant:

The principles applicable to trusts created, or to perfected
assignments, have no application to this case.   We have here
plainly a bailment or agency, created by Monroe (so far as
the balance in the hands of Herrell is concerned), for the
payment of Monroe's debts.   We are seeking to subject the
fund to the payment of a debt of Monroe.   As bearing upon
the matter and upon questions which may arise in the con-
sideration of the case, the following authorities are cited:
Drake on Attachments, Secs. 525, 526; *Clark* v. *Cilley*, 36 Ala.
652; *Sterrett* v. *Miles*, 87 Ala. 472; *Kelly* v. *Roberts*, 40 N. Y.
432; *Center* v. *McQuesten*, 18 Kans. 476; *Briggs* v. *Block*, 18
Mo. 281; *Hearn* v. *Foster*, 21 Tex. 441; Story, Agency, Secs.
465, 477.

*Mr. J. J. Darlington* for the appellee:

Authorities exist to the effect that a mortgage or other

provision by debtor in favor of creditors who have no knowledge of it, will fail as against other creditors who attach before the mortgagees acquire knowledge, and approve; on the ground that two parties, and the assent of each, are essential to every contract. This principle, in its application to cases like that at bar, however, does not prevail here, but gives place to the contrary presumption, under which *femes covert* and insane persons, even, may take by conveyance; namely, that the grantees will accept what is for their benefit. *Webster* v. *Harkness*, 3 Mackey, 220; *Tompkins* v. *Wheeler*, 16 Pet. 118–119; see also *Holsey* v. *Whitney*, 4 Mason, 214; *Marbury* v. *Brooks*, 11 Wheat. 96–8; *Treadwell* v. *Buchly*, 4 Day, 395; *Thompson* v. *Leech*, 2 Salk. 618; *Guggenheimer* v. *Lockridge*, 19 S. E. Rep. 874.

The present case, however, does not turn at all upon either the rejection or the adoption of the principle in question. That principle, as stated above, rests upon the theory that there must be two or more assenting parties to every contract, and that the mere voluntary act of the debtor, in executing a mortgage or assignment in favor of certain of his creditors, is the act of one party alone, not a contract until the other party or parties know of and approve it. But the case at bar presents no such unilateral act, by a single party. Mr. Monroe, the debtor, owed to Mr. Herrell, and to the creditors who had filed their claims, considerably more than the entire amount which was due him from the District of Columbia. Not a dollar, under any circumstances, could come to his hands. These creditors, whose claims were actually filed, and all of whom were there present, contracted with him and with each other that Mr. Herrell should draw the fund, satisfy his own advances, pay certain smaller claimants in full, and distribute the residue *pro rata* among themselves and others in like situation. No authorities can be found which deny that this was a valid and effectual contract. The claims of the actually contracting creditors were more than enough

to absorb the entire fund. Had they agreed to a *pro rata* distribution between themselves and nine mere strangers, who had no claims whatsoever, the latter could have enforced the agreement by suit against Mr. Herrell. *Hendrick* v. *Lindsay*, 93 U. S. 149.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The appellant assigns error upon the charge to the jury, and contends that an instruction should have been given instead to find for the plaintiff for the amount remaining in the hands of the garnishee, after deducting his own demands and the proportions due Campbell, White and Schneider. The contention is, that by the direction to pay the money upon the claims of certain creditors, Herrell became a mere agent or mandatary of Monroe, in respect of those creditors, at least, who were not parties to the agreement, and had no knowledge of the transaction, and had not assented thereto before the service of the writ; and that it created no beneficial interest in them, but remained subject to the revocation of Monroe, and liable to the claims of his attaching creditor.

The English rule in such case now is that a formal trust deed by which property is conveyed for the benefit of creditors does not, of itself, create an enforceable trust for the benefit of each of them. Whatever doubt there may have been on the subject was settled by the Court of Appeals in *Johns* v. *James*, L. R. 8 Ch. Div. 744, following the old case of *Garrard* v. *Lord Lauderdale*, 2 Russ. and My. 451. The principle controlling the decision is that invoked on behalf of the appellant, namely: A common law deed of assignment in trust, until actually accepted by the creditor, ought to be considered as a mandate, just as in the case where one gives money to his servant with direction to pay a certain debt; neither act creates a right in favor of the creditor, but leaves the property or fund subject to the direction of the debtor before performance by the agent or mandatary.

The majority of the American cases, wherein this question has been decided, are probably in accord with the established English doctrine; but we are spared their examination and review by what we understand to be the rule of the Supreme Court of the United States to the contrary. *Brooks* v. *Marbury*, 11 Wheat. 78, 97; *Tompkins* v. *Wheeler*, 16 Pet. 106, 118. In both of those cases conveyances had been executed transferring personal property in trust for sale and application of the proceeds to the payment of certain of the assignor's creditors. In the first case the deed was to a party not himself a creditor.

Chief Justice Marshall, who delivered the opinion of the court, stated the question and answered it as follows: "The single inquiry is whether the assent of the creditors be necessary to the completion of the deed? If it be, then the title of the property it purported to convey remained in Fitzhugh until such assent should be given, and might be subjected to this attachment. . . . Deeds of trust are often made for the benefit of persons who are absent, and even for persons who are not in being. Whether they are for the payment of money, or for any other purpose, no expression of the assent of the person for whose benefit they are made has ever been required as preliminary to the vesting of the legal estate in the trustee. Such trusts have always been executed on the idea that the deed was complete when executed by the parties to it."

In the second case, the deed was directly to the creditors, and was attacked by an unsecured judgment creditor, whose bill charged, among other things, that it "was made without the knowledge, privity or assent of the creditors named therein and who are the parties to whom the deed is given," and "was never delivered to or accepted by the grantees."

The court finding that some of the creditors had assented, as shown by their answers, while others had not, and there was no evidence that any one had dissented, sustained the assignment, saying: "This deed is absolute upon its face,

without any condition whatever attached to it; and being for the benefit of the grantees, the presumption of law is, in the absence of all evidence to the contrary, that the grantees accepted the deed."

It is argued that the foregoing cases are distinguishable from this, because in each case the property had been conveyed by deed regularly recorded in the registry of deeds. We are unable to appreciate the distinction. Apparently, the fact that the assignment was by deed cut no figure in the decision of those cases, any more than it was allowed to affect the conclusion of the English court. In this case the transfer of the legal title to the money, by the actual delivery to Herrell, was as complete as if it had been accompanied by an instrument under seal declaring that effect. The question is entirely independent of the mode and manner of the transfer of the legal title, provided it be effective of that result. In either event the question remains the same. Nor are we able to perceive that any difference is made by the fact that the deeds sustained in those cases were regularly recorded. The recorder was not the agent of the creditors to accept for them the benefit of the trust. Under certain circumstances and for certain purposes delivery to a recorder for record may constitute a delivery of a deed so as to make it operative as a deed; but no such question was involved. Delivery to a recorder of a trust deed executed without the knowledge or assent of the beneficiaries named therein, could no more make it binding and effective than delivery to the trustee named and specially charged with the execution of the trust on behalf of the beneficiaries.

The very question here presented was before the Supreme Court of the District in general term, in a case almost identical with this in point of fact, and the assignment was held to create a trust in favor of the uninformed, and hence unassenting, creditors. *Webster* v. *Harkness*, 3 Mackey, 220.

This case is stronger than that, as we shall see, in one important particular. In that case, the failing contractor collected the money due him from Harkness, who acted for the owner of the building in making settlements. He returned the money to Harkness and instructed him in writing, substantially as in this case, to pay the money to certain creditors.

The preferred creditors were not parties to the arrangement, and the attachment was sued out and served before they had heard of it. The opinion contains an able and instructive discussion of the point, and review of many of the cases, bearing on it, and draws a distinction between such cases, where the intention to create a trust is evident, and that of a mere delivery of money or property to a servant, an agent or mere mandatary, for the convenience or advantage merely of the master or principal. The difference referred to between that case and this is, that Harkness had no interest whatever in the matter, while here Herrell was the largest creditor and beneficiary himself, and was joined by three other creditors. In both cases, the money was actually delivered for the purpose, and the letters merely followed and made certain, as evidence, the directions for the distribution. In the opinion in that case, no stress was laid on the fact that there was a letter of instructions to Harkness.

2. Even if the rule contended for by the appellant had been established in this jurisdiction, the particular facts of this case would bring it within an exception thereto that seems to be well established in England and in some States where the English doctrine prevails. *Siggars* v. *Evans*, 32 Eng. Law and Eq. 139, 144; *Schoolfield* v. *Hirsh*, 71 Miss. 55, 58; *Hastings* v. *Baldwin*, 17 Mass. 552, 556.

It will be remembered in this case that Herrell was himself the principal creditor and chief beneficiary of the trust. Campbell, White and Schneider were also creditors in considerable sums. They were not only present and agreeing

to the disposition of the fund, but they withdrew their claims as filed in order to effect it, thus making it stand upon a valuable consideration as to them. Whilst the other creditors were not then aware of the assignment, and had not expressed their acceptance of its benefits before the garnishment of Herrell, they have never renounced or dissented. In the Mississippi case, cited above, it was said: "The books make a wide distinction between a transfer directly to a creditor and one to a trustee for creditors." . . . "It seems also to be affirmed by most respectable authorities in England and America that when an assignment is made, not to a stranger, a mere trustee, but to a creditor in trust for others, that this makes the required assent of all to the assignment, or that no other assent than that of the creditor to whom the assignment is made is necessary."

In *Siggars* v. *Evans, supra,* the assignment was made to a creditor in trust for himself and others, without his knowledge or theirs. It was sent to him by mail, and it does not appear clearly that he received it until after the attachment was executed upon the property assigned. His acceptance was not received until afterwards. Lord Chief Justice Campbell, who delivered the opinion of the court, seems to assume that notice was given before the attachment, a fact which is obviously not important here. Recognizing the rule that acceptance is necessary in the case of an assignment to a mere trustee, he said: "We do not think, however, that we ought to extend this principle by applying it to a case where the party taking the legal interest under the deed had also a beneficial interest. In such a case it seems impossible to treat him as a mere mandatary. No assent of any third party, as creditor, to come in under the deed, can be necessary to perfect his title, and he seems to have a right to claim directly under the deed as a party taking a legal and equitable interest, and not as a mere mandatary who must obey the directions and is subject to the revocation of

the orders of his principal." It may be remarked too, that in *Tompkins* v. *Wheeler, supra,* the assignment was to certain of the creditors in trust without the intervention of a disinterested third party; but the decision was not upon that ground.

3. If, however, we were to hold to the rule as contended for by the appellant, and deny the foregoing exception thereto, it is not perceived how he could receive any advantage. The judgment would have to be affirmed, nevertheless, because there would still be no fund in the hands of the garnishee upon which the writ could operate.

The direction to Herrell was to distribute the fund *pro rata* among certain named creditors. Among these were the aforesaid Campbell, White and Schneider, who were themselves parties to the agreement. They not only assented, but also parted with a consideration. Their claims amounted, together, to the sum of $4,333.40.

After paying his own demand and advances, the garnishee had left for distribution the sum of $3,469.00, nearly one thousand dollars less than the claims of the three creditors aforesaid. Now, if the remaining creditors had been at once informed and had expressly renounced and repudiated the trust for their benefit, what would have been the result? Their renunciation would not destroy the trust for the others; its only effect could be to increase the dividends of the accepting creditors. Herrell had accepted the fund under a promise of fulfillment. If he had refused to recognize any beneficial interest in Campbell, White and Schneider, they might have sued him in *assumpsit,* upon the promise made to Monroe for their benefit, even if they had not been actual parties to the agreement upon a consideration deemed valuable in law. *Hendrick* v. *Lindsay,* 93 U. S. 143, 149.

Treating the case, then, as if the other creditors had expressly dissented and refused to accept, there was not enough of the fund left to discharge the debts due to Campbell, and

White, and Schneider, respectively.   Consequently, the court could not have charged otherwise than to find for the garnishee.

The judgment is right, and must be affirmed, with costs. It is so ordered.

*Affirmed.*